SIDNEY BALINSKY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Balinsky v. Commissioner
Docket No. 5200-73.
United States Tax Court
T.C. Memo 1975-100; 1975 Tax Ct. Memo LEXIS 271; 34 T.C.M. (CCH) 487; T.C.M. (RIA) 750100; April 14, 1975, Filed. *271 Sidney Balinsky, pro se. Michael K. Phalin, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $4,473.02 in petitioner's Federal income tax for 1970 and an addition to the tax, under section 6653(a) of the Internal Revenue Code of 1954, in the amount of $225. [1]/ The only issue in dispute is whether cash expended by petitioner for the purchase of losing racetrack tickets during the period January 1 thru July 5, 1970, originated from nontaxable sources. FINDINGS OF FACT At the time the petition was filed, petitioner was a legal resident of Brooklyn, New York. He filed an income tax return for 1970 as a married individual filing separately. During 1970 petitioner was employed as a chauffeur and received compensation in wages of $2,762.70, together with unreported tip income of $540. His wife earned $1,028. Their cost of living was $6,170. Petitioner owned two life insurance policies but had exhausted their full loan values prior to January 1, 1970. His *272 son, David Balinsky, had a savings bank account from which $1,043.20 was withdrawn and $700 was deposited during the period from January 1 thru July 5, 1970. Petitioner's daughter, Harriet Balinsky, had a savings bank account from which $1,149.28 was withdrawn and $989.72 was deposited during that same period. Petitioner was an habitual gambler during most of his adult life prior to and during 1970. On January 3, 1970, he cashed a winning racetrack betting ticket in the amount of $1,624.60. On or about June 4, 1970, he cashed other winning tickets totaling $45,266. This latter sum was deposited the next day, June 5, 1970, in a savings bank account maintained by petitioner and his wife. None of these funds were withdrawn until July 6, 1970, and between that date and the end of the year, $45,000 was withdrawn. On his income tax return for 1970, petitioner reported gambling winnings of $46,891 and gambling losses in the same amount. When the return was audited, petitioner submitted for inspection $46,891 worth of losing tickets to substantiate the deduction claimed in that amount. An examination of these losing tickets showed, however, that only $30,901 worth were purchased between *273 July 6, 1970, the date of the first withdrawal of the June 5, 1970, deposit, and December 31 of that year. The other losing tickets, totaling $15,990, were purchased during January, May, June, and the period of July 1 thru 5, 1970. Petitioner submitted no other records to support the contents of his return. In determining the deficiency in dispute, respondent employed the source-and-application-of-funds method of income reconstruction and treated the $15,990 difference between the total amount of the losing tickets submitted for inspection and the amount of the tickets purchased after July 5, 1970, as unexplained expenditures. On this basis he determined that petitioner had unreported gambling winnings of $14,910. OPINION Respondent contends that, under the source-and-application-of-funds method of income recon-struction used in petitioner's case, petitioner's gambling income for 1970 should be computed as follows: Unexplained expenditures: Tickets purchased 1-1-70
thru 7-5-70
$15,990.00
Agreed living costs (50%)
3,085.00
Total expenditures
$19,075.00
Taxable income available to
cover expenditures:
Reported winning on 1-3-70
$ 1,625.00
Reported income from wages
and interest on savings (50%)
2,000.00
Agreed unreported tip income
540.00
Total credits for
taxable income
$ 4,165.00
Unreported gambling income
$14,910.00
*274 Petitioner does not challenge respondent's right to use the source-and-application-of-funds method of income reconstruction. As discussed below, his contention is that he had six sources of non-taxable moneys or moneys reported as income which he used to cover the costs of his gambling activities during the period January 1 thru July 5, 1970. We do not think the record supports his position. 1. Petitioner placed in evidence two Treasury Department Forms 1099 reflecting racetrack winnings of $2,605.20 on October 13, 1965, and $2,361.60 on December 3, 1965. Yet he admitted that he could not truthfully say that he had any amount of these earnings on hand on January 1, 1970. 2. Petitioner testified that his mother, who died on February 21, 1969, gave him $1,500 to $1,800 in 1968. But he admitted that he did not think he had any amount of this money on hand at the end of 1969. 3. Petitioner exhausted the loan value of two life insurance policies, but he testified he "wouldn't want to make a statement" on how much he borrowed on those policies during the first 6 months of 1970. 4. During the period January 1 thru July 5, 1970, $1,043.20 was withdrawn from his son's savings account *275 and $1,149.28 from his daughter's. Petitioner testified that he has five children. Even though he has never earned more than $5,000 in any year of his 30 years of marriage, his children have worked at various jobs and have obtained scholarships and incentive awards which have enabled them to go to college or universities. One son is a professor, three children are teachers in the New York public schools, and the fifth is presently attending college. Petitioner expressed great pride in the accomplishments of his children. Notwithstanding his insatiable appetite for gambling, we are not prepared to accept, in the absence of any corroboration whatever, his claim that the money withdrawn from his children's savings accounts during the first 6 months of 1970 was used to bet on horseraces. 5. Petitioner testified that an uncle, now deceased, advanced him money, estimated at 5,000, during the crucial period. According to petitioner's testimony, he had an understanding with his uncle that petitioner would share his winnings if petitioner won a large amount of money. We find these statements incredible. Petitioner's testimony as to the dates and amounts of the advances and the terms of the *276 financial arrangement with his uncle was imprecise and evasive. Petitioner testified that his uncle never kept any record of the advances, never set any date for repayment, and, in fact, never even asked for repayment. He admitted, further, that he did not share with his uncle the $45,266 winnings of June 4, 1970. We give no weight to petitioner's claim that his uncle advanced him money for use in his gambling activities. 6. The final source claimed by petitioner is the $1,624.60 which he won on January 3, 1970, and reported as taxable income. However, he was given full credit for this amount in the income reconstruction made by respondent. On the trial record before us, we are compelled to sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. /↩ The petition does not place in dispute petitioner's liability for the addition to the tax.